AD/pd #15587
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
------------------------------------------------------------------------x   **Index No.: 709672/2019**

BEVERLY WILLIAMS,

                                        Plaintiff,              **RESPONSE TO**
                                                               **DEFENDANT'S NOTICE**
                        -against-                              **FOR DISCOVERY AND**
                                                               **INSPECTION**
ANGELO GIONIS, PAULINE GIONIS, FANCY
VARIETIES INC., THE CITY OF NEW YORK and
NEW YORK CITY DEPARTMENT OF
TRANSPORTATION,

                                        Defendants.

------------------------------------------------------------------------x

**S I R S:**

        **PLEASE TAKE NOTICE**, that the defendant, FANCY VARIETIES INC., by its

attorneys, Kerley, Walsh, Matera & Cinquemani, P.C., as and for its response to defendant

ANGELO GIONIS' Notice for Discovery and Inspection, states upon information and belief as

follows:

        1.      Objection, this demand is overly broad and unduly burdensome.

                Notwithstanding said objection, annexed hereto as **Exhibit A** is a copy of

                defendant's policy of insurance.

        **PLEASE TAKE NOTICE**, that the answering defendant reserves their right to

supplement the aforementioned responses, when and if any additional information becomes

available which would warrant further disclosure with respect to the aforementioned response.

        **PLEASE TAKE FURTHER NOTICE**, that the answering defendant reserves

their right to amend and/or supplement any of the foregoing responses up to and including the time

of trial.

**20200625**

Dated:    Seaford, New York
          May 18, 2020

                                    Yours, etc.,

                                    KERLEY, WALSH, MATERA
                                    & CINQUEMANI, P.C.


                                    _____
                                    ARGIRO DRAKOS, ESQ.
                                    **adrakos@kerleywalsh.com**
                                    Attorneys for Defendant
                                    FANCY VARIETIES INC.
                                    2174 Jackson Avenue
                                    Seaford, NY 11783
                                    (516) 409-6200


TO:

LIPSIG, SHAPEY, MANUS & MOVERMAN, P.C.
Attorneys for Plaintiff
40 Fulton Street, 25th Floor
New York, NY 10038
Attention: James D. Neville, Esq.

LAW OFFICE OF ANDREA G. SAWYERS
Attorneys for Defendant
ANGELO GIONIS
P.O. Box 2903
Hartford, CT 06104-2903

Zachary Carter, Esq.
New York City Corporation Counsel
Attorneys for Defendants
The City of New York and
NYC Department of Transportation
100 Church Street
New York, NY 10007

# EXHIBIT A

Fancy Varieties Inc
16830 Hillside Ave
Jamaica, NY 11432-4441



**BUSINESSOWNER'S POLICY DECLARATIONS**

**AmGUARD Insurance Company**
**A Stock Company**

Issued: 08/28/2017

Policy No.:
FABP820838

Renewal of: FABP744440

## POLICY INFORMATION PAGE

**[1]**  **Named Insured and Mailing Address**
Fancy Varieties Inc
16830 Hillside Ave
Jamaica, NY 11432

**[2]**  **Agency**
MORSTAN GENERAL AGENCY
600 COMMUNITY DRIVE
PO Box 4500
Manhasset, NY 11030

**[3]**  **Policy Period**
From October 2, 2017 to October 2, 2018, 12:01 AM, standard time at the insured's mailing address.

**[4]**  **Description of Business**
All Other General Merchandise Stores

**[5]**  **Coverage**
This policy consists of the Coverage Forms listed on the **Schedule of Forms and Endorsements (IIT SF 01 05)**.

**[6]**  **Premium**
The premium shown below may be subject to adjustment.
Certified Acts of Terrorism
TOTAL POLICY PREMIUM
NY Fire Insurance Fee
TOTAL PAYABLE

**[7]**  **Payment of Premium**
In return for your payment of premium, and subject to all terms of this policy, we agree with you to provide insurance as stated in this policy.



20200625

**BUSINESSOWNER'S POLICY DECLARATIONS**

Issued: 08/28/2017

**Policy No.:** FABP820838                                          **Effective Date:** 10/02/2017

## SECTION I – PROPERTY COVERAGES AND LIMITS OF INSURANCE

**LOCATION: 001   BUILDING: 001**
16830 Hillside Ave
Jamaica, NY 11432-4441
Queens County

**Property Deductible: $1,000**
**Optional Coverages/Glass Deductible: $500**
**Classification: 53315 - Variety Store**

**COVERAGES:**

| | |
|---|---|
| **Awnings Coverage** | |
| Limit | $2,500 |
| **Business Personal Property Coverage** | |
| Limit | $30,000 |
| Seasonal Increase Percent | 25 |
| Valuation | Replacement Cost |
| **Liability** | |
| IMPORTANT NOTE | THIS COVERAGE IS RATED BASED ON AN ESTIMATE AND IS SUBJECT TO AUDIT |
| Limit | Included |
| **Accounts Receivable** | |
| On-Premises Limit | $25,000 |
| Off-Premises Limit | 25,000 |
| **Debris Removal** | |
| Limit | 25%/$10,000 |
| **Equipment Breakdown Coverage (HSB)** | |
| Inspection Contact Name | Radif M. Rashid |
| Phone Number | 718-297-9445 |
| **Money and Securities** | |
| On Premises Limit | $5,000 |
| Off Premises Limit | $5,000 |
| **Ordinance or Law - Increased Cost Of Construction** | |
| Limit | $10,000 |
| **Outdoor Property** | |
| Limit | $10,000 |
| **Outdoor Signs - Optional Coverage** | |
| Limit | $5,000 |
| **Protective Safeguards** | |
| Protective Safeguards | P-1 |
| **Retail Stores Coverage** | |
| Brands and Labels | BPP Limit |
| Credit Card Slips | $10,000 |

IIT DS 01 05                                                          Page 2 of 5

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued: 08/28/2017

**Policy No.:** FABP820838                          **Effective Date:** 10/02/2017

| | |
|---|---|
| Delivery Errors and Omissions Coverage | $10,000 |
| Lock Replacement | $1,000 |
| Loss Payment on Merchandise Sold | $25,000 |
| Merchandise Withdrawal Expenses Coverage | $25,000 |
| Ordinance or Law - Equipment Coverage | Building/BPP Limit |
| Property in Transit (including F.O.B. Shipments) | $5,000 any one salesperson/$25,000 |
| Web Sites (Business Income) | 7 day period or $50,000/$100,000 |
| **Valuable Papers and Records** | |
| On-Premises Limit | $25,000 |
| Off-Premises Limit | $25,000 |
| **Water Back-up and Sump Overflow** | |
| Covered Property Limit | $5,000 |
| Business Income and Extra Expense Limit | $5,000 |

IIT DS 01 05

20200625

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued: 08/28/2017

**Policy No.:  FABP820838**                                    **Effective Date:   10/02/2017**

### SECTION II – LIABILITY COVERAGES AND LIMITS OF INSURANCE

Each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period.  Please refer to Section II – Liability in the Businessowners Coverage form and any attached endorsements.

| Coverage | Limits of Insurance |
|---|---|
| Liability and Medical Expenses - Each Occurrence | $1,000,000 |
| General Aggregate (Other than Products and Completed Operations) | $2,000,000 |
| Products & Completed Operations Aggregate | $2,000,000 |
| Medical Expenses (Each Person) | $5,000 |
| Liability Property Damage Deductible | None |
| Liability Deductible - Bodily Injury | None |

**IIT DS 01 05**                                                                          **Page 4 of 5**

**20200625**

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued: 08/28/2017

**Policy No.:** FABP820838

**Effective Date:** 10/02/2017

## POLICY WIDE COVERAGES AND LIMITS OF INSURANCE

| | |
|---|---|
| **Appurtenant Structures** | |
| Limit | $50,000 combined Building/BPP |
| **Business Income & Extra Expense** | |
| Limit | Actual Loss Sustained up to 12 Months |
| **Damage To Premises Rented To You** | |
| Limit | $100,000 |
| **Electronic Data** | |
| Limit | $10,000 |
| **Employee Dishonesty** | |
| Limit | $10,000 |
| **Fire Department Service Charge** | |
| Limit | $25,000 |
| **Fire Extinguisher Systems Recharge Expense** | |
| Limit | $5,000 |
| **Forgery or Alteration** | |
| Limit | $10,000 |
| **Glass Expense** | |
| Limit | Actual Loss Sustained |
| **Interruption of Computer Operations** | |
| Limit | $10,000 |
| **Loss by Theft of furs, fur garments, garments trimmed with fur** | |
| Limit | $2,500 |
| **Loss by Theft of jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals** | |
| Limit | $5,000 |
| **Loss by Theft of patterns, dies, molds and forms** | |
| Limit | $2,500 |
| **Money Orders and "Counterfeit Money"** | |
| Limit | $1,000 |
| **Newly Acquired Or Constructed Property - Buildings** | |
| Limit | 25% of Building Limit/Not more than $500,000/Bldg |
| **Newly Acquired Or Constructed Property - Business Personal Property** | |
| Limit | $250,000 |
| **Personal Effects** | |
| Limit | $5,000 |
| **Personal Property Off Premises** | |
| Limit | $10,000 |
| **Pollutant Clean Up and Removal** | |
| Limit | $10,000 |
| **Preservation of Property** | |
| Limit | Within 30 Days |
| **Terrorism** | |
| Certified Acts | Include Coverage |

IIT DS 01 05

**BUSINESSOWNERS POLICY
DECLARATIONS**

Issued:  08/28/2017

**Policy No.:**  FABP820838                                    **Effective Date:**  10/02/2017

### SCHEDULE OF FORMS AND ENDORSEMENTS

| Form Number | Title |
|---|---|
| IIT DS 01 05 | Businessowners Policy Declarations |
| BP 00 03 01 10 | Businessowners Coverage Form |
| BP IN 01 01 10 | Businessowners Coverage Form Index |
| END SCHD | Schedule Of Forms And Endorsements |
| IL 99 00 08 13 | Authorization and Attestation |
| IL P 001 01 04 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholder |
| PRIV POL | Privacy Policy |
| BP 99 NY 10 15 | NY Policy Customizations |
| BP 01 15 09 15 | New York Changes |
| BP 04 02 01 06 | Additional Insured - Managers or Lessors of Premises |
| BP 04 17 01 10 | Employment - Related Practices Exclusion |
| BP 04 30 01 06 | Protective Safeguards |
| BP 05 01 07 02 | Calculation Of Premium |
| BP 05 15 01 15 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| BP 05 23 01 15 | Cap On Losses From Certified Acts Of Terrorism |
| BP 05 38 01 15 | Exclusion Of Other Acts Of Terrorism Committed Outside The United States; Cap On Losses From Certified Acts Of Terrorism |
| BP 99 04 01 10 | Equipment Breakdown Coverage |
| BP 99 188 06 16 | Deductible Endorsement - Property |
| BP 99 60 03 12 | Water Back-up and Sump Overflow |
| BP 99 62 12 12 | New York - Retail Stores |

**AUTHORIZATION
AND ATTESTATION
IL 99 00 08 13**

## THIS ENDORSEMENT AUTHORIZES THE POLICY.

# AUTHORIZATION AND ATTESTATION

This endorsement authorizes the insurance contract between you and the insurance company subsidiary listed on the DECLARATIONS PAGE of your insurance policy.

In Witness Whereof, this page executes and fully attests to this policy.  If required by state law, the policy shall not be valid unless countersigned by our authorized representatives.

Authorizing signatures

*Michael J. Dulin*

Michael J. Dulin
General Counsel and Secretary

*Sy Foguel*

Sy Foguel, ACAS, FILAA
Chief Executive Officer and President

IL 99 00 08 13                                                                                                                   Page 1 of 1

20200625

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL P 001 01 04      © ISO Properties, Inc., 2004      **Page 1 of 1**

**20200625**

# Privacy Policy

We are committed to treating and using personal financial information about you and your employees responsibly. We will not disclose nonpublic, personal information about you and your employees to anyone except as permitted or required by law.

This disclosure is made on behalf of the following and applicable affiliates:

> Berkshire Hathaway GUARD Insurance Companies
>
> AmGUARD Insurance Company

We collect nonpublic, personal information from you about you and your employees to properly maintain and service your policy. This nonpublic, personal information may come from the following sources:

- Application Information and Other Forms. On the application for insurance or other forms completed by you, you provide us with most of the information we need to process policies and claims.

- Transaction Information. We may develop information about you and your employees based on transactions and experiences you have with us, our affiliates, or others.

- Third-Party Information. This is information that we receive to verify or supplement your application or claims.

**Disclosing Information**

In the course of conducting business and as permitted or required by law, we may share nonpublic personal information about you and your employees with our affiliated companies. We do not disclose any nonpublic, personal information about you and your employees to any nonaffiliated third parties, except for the conduct of our business or as permitted or required by law. Information may be supplied to others providing business services for us. Additionally, we may provide information for audit or research purposes or to law enforcement agencies to help us prevent fraud.

**Securing Information**

We restrict access to nonpublic personal information about you and your employees to our employees who need to know the information necessary to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with applicable regulations to guard the nonpublic, personal information of you and your employees.

A Current Copy of Our Privacy Policy is Always Available at our web site.

P.O. Box A-H • 16 S. River Street • Wilkes-Barre, PA 18703-0020 • www.guard.com

Telephone: 570-825-9900 • Customer Service Hotline: 800-673-2465

20200625

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NY POLICY CUSTOMIZATIONS

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

The following is a summary of the coverages and limits provided by this endorsement.  For complete details on specific coverages, see the applicable coverage wording.  The limits of insurance stated in this endorsement apply unless higher limits are shown in the Declarations.

### SCHEDULE OF LIMIT CHANGES
#### Section I – Property

| Coverage | BP 00 03 Limit | Revised Limit |
|---|---|---|
| Accounts Receivable | $10,000 at premises<br>$5,000 not at premises | $25,000 at premises<br>$25,000 not at premises |
| Appurtenant Structures | n/a | $50,000 |
| Awnings | Included in Building Limit | $2,500 |
| Employee Dishonesty | Optional | $10,000 |
| Fire Department Service Charge | $2,500 | $25,000 |
| Forgery Or Alteration | $2,500 | $10,000 |
| Loss or Damage by Theft | | |
| Jewelry, Watches, etc. | $2,500 | $5,000 |
| Newly Acquired Or Constructed Property | | |
| Buildings | $250,000 | 25% Buildings Limit/<br>$500,000 each Building |
| Business Personal Property | $100,000 | $250,000 |
| Outdoor Property / any one tree, shrub or plant | $2,500 / $1,000 | $10,000 / $1,000 |
| Outdoor Signs | $1,000 attached to buildings only | $5,000 all outdoor signs |
| Personal Effects | $2,500 | $5,000 |
| Premises Boundary Increased | 100 feet | 1,000 feet |
| Valuable Papers And Records | $10,000 at premises<br>$5,000 not at premises | $25,000 at premises<br>$25,000 not at premises |

#### Section II – Liability

| Coverage | BP 00 03 Limit | Revised Limit |
|---|---|---|
| Supplementary Payments - Cost Of Bail Bonds | $250 | $1,000 |
| Supplementary Payments - Loss Of Earnings | $250 | $500/day |

---

20200625

## NY POLICY CUSTOMIZATIONS

Any reference in **Section I — Property** of the Businessowner's Coverage Form to within 100 feet of the described premises is amended to read within 1,000 feet of the described premises.

**Section I – Property, A.1., Covered Property** is amended as follows:

1. The following is added to Paragraph **a.**

   **(7)** Building Glass, meaning glass that is part of a building or structure.

**Section I – Property, A.4., Limitations** is amended as follows:

1. Paragraph **b.(2)** is deleted.
2. Paragraph **c.** is deleted and replaced with the following:

   **c.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

   **(1)** $2,500 for furs, fur garments and garments trimmed with fur.

   **(2)** $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $500 or less per item.

   **(3)** $2,500 for patterns, dies, molds and forms.

3. Paragraph **d.** is added:

   **d.** For loss or damage by any covered cause of loss, we will only pay up to $2,500 per occurrence for awnings.

**Section I – Property, A.5., Additional Coverages** is amended as follows:

1. Paragraph **c. Fire Department Service Charge** is replaced with the following:

   When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000, unless a different limit is shown in the Declarations, for your liability for fire department service charges:

   **(1)** Assumed by contract or agreement prior to loss; or

   **(2)** Required by local ordinance.

2. Paragraph **k. - Forgery Or Alteration -** Paragraph **(4)** is replaced with the following:

   **(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $10,000, unless a higher Limit of Insurance is shown in the Declarations.

**Section I – Property, A.6., Coverage Extensions** is amended as follows:

1. The last paragraph in Paragraph **a. – Newly Acquired Or Constructed Property** under **(1) Buildings** is replaced with the following:

   The most we will pay in any one occurrence for loss or damage under this Extension is 25% of the Limit of Insurance for Buildings shown in the Declarations, but not more than $500,000 at each building.

2. The last paragraph in Paragraph **a. – Newly Acquired Or Constructed Property** under **(2) Business Personal Property** is replaced with the following:

   The most we will pay for loss or damage under this Extension is $250,000 at each building.

3. The last sentence in Paragraph **b. – Personal Property Off-premises** is amended as follows:

   The most we will pay for loss or damage under this Extension is $10,000, unless a higher Limit of Insurance for Personal Property Off-premises is shown in the Declarations.

4. Paragraph **c. - Outdoor Property** is replaced with the following:

   **c. Outdoor Property**
   You may extend the insurance provided by this policy to apply to your outdoor:
   **(1)** Fences, signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:
   **(a)** Fire;
   **(b)** Lightning;
   **(c)** Explosion;
   **(d)** Riot or Civil Commotion; or
   **(e)** Aircraft.
   **(2)** Radio and television antennas (including satellite dishes), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:
   **(a)** Fire;
   **(b)** Lightning;
   **(c)** Windstorm;
   **(d)** Ice, Snow, Sleet or Hail;
   **(e)** Explosion;
   **(f)** Riot or Civil Commotion; and
   **(g)** Aircraft.
   The most we will pay for loss or damage under this Extension is $10,000, unless a higher Limit of Insurance for Outdoor Prop-

**NY POLICY CUSTOMIZATIONS**

erty is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

5.  Paragraph **d. – Personal Effects** is replaced with the following:

    You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This extension does not apply to:
    (1) Tools or equipment; or
    (2) Loss or damage by theft.
    The most we will pay for loss or damage under this Extension is $5,000 at each described premises.

6.  Paragraph **e. – Valuable Papers And Records** Paragraph **(3)** is replaced with the following:

    (3) The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

    For "valuable papers and records" not at the described premises, the most we will pay is $25,000.

7.  Paragraph **f. – Accounts Receivable** Paragraph **(2)** is replaced with the following:

    (2) The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $25,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

    For accounts receivable not at the described premises, the most we will pay is $25,000.

8.  Paragraph **f. – Accounts Receivable** Paragraph **(3)** is replaced with the following:

    (3) Paragraph **B. Exclusions** in **SECTION I – PROPERTY** does not apply to this Coverage Extension except for:
    (a) Paragraph **B.1.c. Governmental Action;**
    (b) Paragraph **B.1.d. Nuclear Hazard;**
    (c) Paragraph **B.1.f. War And Military Action;**
    (d) Paragraph **B.2.f. Dishonesty;**
    (e) Paragraph **B.2.g. False Pretense;**

(f) Paragraph **B.2.o. Electrical Disturbance**
(g) Paragraph **B.3.;** and
(h) Paragraph **B.6. Accounts Receivable Exclusion.**

9.  Paragraph **g. – Appurtenant Structures** is added:

    g.  **Appurtenant Structures**

        (1) When there is a Building Limit of Insurance shown in the Declarations at the described premises, you may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage caused by or resulting from a Covered Cause of Loss to incidental appurtenant structures within 1,000 feet of the described premises.

        (2) When there is a Business Personal Property Limit of Insurance shown in the Declarations at the described premises, you may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage caused by or resulting from a Covered Cause of Loss to Business Personal Property within incidental appurtenant structures within 1,000 feet of the described premises.

        (3) Incidental appurtenant structures include storage buildings, carports, garages and similar structures which have not been specifically described in the Declarations.

        The most we will pay for loss or damage under this Coverage Extension in any one occurrence for any combination of loss or damage to Building and Business Personal Property is $50,000.

**Section I – Property, B. Exclusions 2.** is amended as follows:

1.  Paragraph **q. Asbestos** is added:

    q.  **Asbestos**
        Any loss, damage or expense which would not have occurred in whole or in part but for the presence of asbestos.

**Section I – Property, G. Optional Coverages** is amended as follows:

1.  Paragraph **1. – Outdoor Signs** Paragraph **d.** is replaced with the following:

    The most we will pay for loss or damage in any one occurrence is $5,000, unless a higher Limit

**20200625**

of Insurance for Outdoor Signs is shown in the Declarations.

2. Paragraph 3. – **Employee Dishonesty** Paragraph c. is replaced with the following:

The most we will pay for loss or damage in any one occurrence is $10,000, unless a higher Limit of Insurance for Employee Dishonesty is shown in the Declarations.

**Section II – Liability, A. Coverages** is amended as follows:

1. Under **Business Liability** Paragraph f., **Coverage Extension – Supplementary Payments**, Paragraph **(1)**, sections **(b)**, **(c)** and **(d)** are replaced with the following:

    (b) Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

    (c) The cost of appeal bonds or bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

    (d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**Section II – Liability, B. Exclusions** is amended as follows:

1. Under **1., Applicable To Business Liability Coverage**, Paragraph **a., Expected Or Intended Injury** is deleted and replaced with the following:

    a. **Expected Or Intended Injury**
    "Bodily injury" or "property damage" (including any unexpected or unintended portion thereof) if any "bodily injury" or "property damage" was expected or intended from the standpoint of any insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

2. Under **1., Applicable To Business Liability Coverage**, Paragraph **a., Employer's Liability** is deleted and replaced with the following:

    e. **Employer's Liability**
    "Bodily injury" to:
    (1) An "employee" of the insured arising out of and in the course of:
        (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business;
    (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above; or
    (3) A subcontractor engaged in work for or on behalf of the insured, and any "employee" of a subcontractor engaged in work for or on behalf of the insured.
    This exclusion applies:
    (1) Whether the insured may be liable as an employer or in any other capacity; and
    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
    This exclusion does not apply to liability assumed by the insured under an "insured contract".

3. Under **1., Applicable To Business Liability Coverage**, Paragraph **j., Professional Services (8)** and **(9)** are amended and **(10)** is added as follows:

    (8) Any body piercing services (not including ear lobe piercing), tattooing and similar services;
    (9) Services in the practice of pharmacy; and
    (10) Computer or software design, advice or consultation, programming services including virus protection, firewall or web site design.

4. Under **1., Applicable To Business Liability Coverage**, Paragraph **k., Damage To Property**, the following is added to the last paragraph:

    Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" to borrowed equipment while not being used to perform operations at a job site.

5. Under **1., Applicable To Business Liability Coverage**, Paragraph **m., Damage To Your Work**, the following is deleted:

    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

6. Under **1., Applicable To Business Liability Coverage**, Paragraph **p. Personal And Advertising Injury**, Paragraph **(1)** is deleted and replaced with the following:

    (1) Caused by or at the direction of or with the consent or acquiescence of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.

NY POLICY CUSTOMIZATIONS

7. Under 1., **Applicable To Business Liability Coverage**, Paragraph **p., Personal and Advertising Injury**, the following is added:

    **(14)** Arising out of:
    (a) Your placement of advertising for others on your web site or a link to or a reference to a web site or web address of others on your web site.
    (b) Your placement of content or company brand or product information from others on your web site or on any frame or border within your web site.
    (c) Software or programming related to your web site's design, appearance or functions.

    **(15) Discrimination/Harassment**
    Arising out of discrimination, harassment or humiliation by an officer, director, member or partner of the insured.

    **(16) Securities**
    Arising out of representations made by you or your agents regarding the value or suitability of any securities, or the fluctuation in value or price of any stocks, bonds or other securities.

    **(17) Unfair Competition**
    Violation of antitrust laws, state and federal laws governing restrictions on trade, unfair competition or deceptive advertising.

8. Under 1., **Applicable To Business Liability Coverage**, Paragraph **r. Criminal Acts** is deleted and replaced with the following:

    **r.   Criminal Acts**
    "Bodily injury", "property damage", or "personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

9. Under 1., **Applicable To Business Liability Coverage**, Paragraph **t.** is added as follows:

    **t.   Asbestos**
    (1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.
    (2) Any damages, judgments, settlements, loss, costs or expenses that:
        (a) May be awarded or incurred by reason of any claim or "suit" alleging

actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the presence of asbestos:
    (b) Arise out of any request, demand, order to statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos presence; or
    (c) Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effect of an asbestos presence.

**Section II – Liability, D, Liability And Medical Expenses Limits Of Insurance** is amended as follows:

1. Paragraph **2.** is replaced with the following:

    2. The most we will pay for the sum of all damages because of all:
        a. "Bodily injury", "property damage" and medical expenses, arising out of any one "occurrence" including "Bodily injury" and "property damage" under the "products-completed operations hazard"; and
        b. "Personal and advertising injury" sustained by any one person or organization;

    is the Liability and Medical Expenses – Each Occurrence limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

2. Paragraph **4.** is replaced with the following:

    **4.   Aggregate Limits**
    Regardless of the number of occurrences and subject to the Liability and Medical Expenses-Each Occurrence limit, the most we will pay for:
        a. All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses-Each Occurrence limit. This limit is shown in

**20200625**

the declarations as "Products and Completed Operations Aggregate".

b. All:

(1) "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

(2) Plus medical expenses;

(3) Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses-Each Occurrence limit shown in the Declarations. This limit is shown in the declarations as "General Aggregate (other than Products and Completed Operations Aggregate)".

Subject to Paragraph a. or b. above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section II – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**Section II – Liability, E. Liability And Medical Expense General Conditions** is amended as follows:

1. Under **2., Duties In The Event Of Occurrence, Offense, Claim Or Suit,** Paragraphs **e.** and **f.** are added as follows:

   e. If we cover a claim or "suit" under this coverage that may also be covered by other valid and collectible insurance available to an additional insured, such insurance if any, shall be primary, and such additional insured must submit such claim or suit to the other insurer for defense and indemnity.

   f. Paragraphs **a.** and **b.** apply to you or to any additional insured only when such "occurrence," offense, claim or suit is known to you or any additional insured or your or any ad-

ditional insured's partner, limited liability company manager, executive officer, trustee or political official if you or any additional insured is a political subdivision or agency. This Paragraph **f.** applies separately to you and any additional insured.

2. Paragraph **5. Representations** is added as follows:

   5. **Representations**

   When You Accept This Policy

   By accepting this policy, you agree:

   a. The statements in the Declaration are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

BUSINESSOWNERS
BP 01 15 09 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A. Section I – Property** is amended as follows:

1. Paragraph **(5)** under **A.5.l. Increased Cost Of Construction** Additional Coverage is replaced by the following:

   **(5)** Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

2. Paragraph **r.** under **A.5. Additional Coverages** does not apply.

3. Paragraph **i.** under **B.1. Exclusions** does not apply.

4. Paragraph **(3)** under **B.1.j. Exclusions** does not apply.

5. Paragraph **(2)** under **B.2.l. Exclusions** is replaced by the following:

   **(2)** Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

6. Paragraph **E.2. Appraisal** Property Loss Conditions is replaced by the following:

   **2. Appraisal**

   a. If we and you disagree on the value of the property, the extent of the loss or damage or the amount of the loss or damage, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.

   b. If we or you fail to proceed with the appraisal of the covered loss after a written demand is made by either party, then either party may apply to a court having jurisdiction for an order directing the party that failed to proceed with the appraisal to comply with the demand for the appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such order.

   c. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the extent of the loss or damage and the amount of loss or damage. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

   d. Each party will:

   **(1)** Pay its chosen appraiser; and

   **(2)** Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

7. The following is added to Paragraph **E.3. Duties In The Event Of Loss Or Damage** Property Loss Conditions:

   a. Notice given by or on your behalf; or

   b. Written notice by or on behalf of any claimant;

   to any of our agents in New York State, which adequately identifies you, will be the same as notice to us.

 © Insurance Services Office, Inc., 2015

20200625

8. The following is added to Paragraph **E. Property Loss Conditions:**

   **Estimation Of Claims**

   Upon request, we will furnish you or your representative with a written estimate of damages to real property, specifying all deductions, provided such an estimate has been prepared by us or has been prepared on our behalf for our own purposes. This estimate will be provided within 30 days after your request or its preparation, whichever is later.

9. Paragraphs **f.** and **g.** under **F.2. Mortgageholders** Property General Conditions are replaced by the following:

   **f. Cancellation**

   (1) If we cancel this Policy, we will give written notice to the mortgageholder at least:

      (a) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

      (b) 30 days before the effective date of cancellation if we cancel for any other reason.

   (2) If you cancel this Policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

      (a) The effective date of cancellation of the insured's coverage; or

      (b) 10 days after we give notice to the mortgageholder.

   **g. Nonrenewal**

   (1) If we elect not to renew this Policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this Policy.

   (2) If you elect not to renew this Policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

      (a) The expiration date of the Policy; or

      (b) 10 days after we give notice to the mortgageholder.

10. Paragraph **4.** under **H. Property Definitions** does not apply.

11. If this Policy covers the interest of the owner of any of the following types of buildings or structures:

   **a.** Residential (except one- or two-family buildings or structures);

   **b.** Commercial; or

   **c.** Industrial;

   the following provision is added:

   Before payment to you for loss or damage to the above buildings or structures caused by or resulting from fire, we will:

   **a.** Deduct from your payment the claim of any tax district that issues a certificate of lien in accordance with the Insurance Law; and

   **b.** Pay directly to the tax district the amount of the claim.

   When we pay that claim, we will have no obligation to pay the amount of that claim to you. Our payment of that claim within 30 days of our receipt of the certificate of lien will be a conclusive presumption that the claim was valid and properly paid.

**B. Section II – Liability** is amended as follows:

1. Paragraph **a.** under **A.1. Business Liability** is replaced by the following:

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section II – Liability; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

 © Insurance Services Office, Inc., 2015

20200625

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

2. The following provision is added and supersedes any provision to the contrary:

   Failure to give notice to us as required under this Policy shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the Insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

3. The following is added to Paragraph **E.2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** Liability And Medical Expenses General Condition:

   a. Notice given by or on your behalf; or

   b. Written notice by or on behalf of any claimant;

   to any of our agents in New York State, which adequately identifies you, will be the same as notice to us.

4. Paragraph **E.3. Legal Action Against Us** Liability And Medical Expenses General Condition is replaced by the following:

   **3. Legal Action Against Us**

   a. Except as provided in Paragraph **b.**, no person or organization has a right under this Policy:

      (1) To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

      (2) To sue us on this Policy unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and a release of liability signed by us, the insured and the claimant or the claimant's legal representative.

   b. With respect to "bodily injury" and "personal and advertising injury" claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

   However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

      (1) Brings an action to declare the rights of the parties under the Policy; and

      (2) Names the injured person, someone acting for the injured person or other claimant as a party to the action.

5. The following is added to Paragraph **E. Liability And Medical Expenses General Conditions:**

   **Transfer Of Duties When A Limit Of Insurance Is Used Up**

   a. If we conclude that, based on "occurrences", offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

      (1) Liability And Medical Expenses Limit;

      (2) Medical Expenses Limit; or

      (3) Damage To Premises Rented To You;

      is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

   b. When a limit of insurance described in Paragraph **a.** above has actually been used up in the payment of judgments or settlements:

      (1) We will notify the first Named Insured, in writing, as soon as practicable, that:

         (a) Such a limit has actually been used up; and

         (b) Our duty to defend "suits" seeking damages subject to that limit has also ended.

(2) We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

(3) The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

c. The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph b.(2).

The duty of the first Named Insured to reimburse us will begin on:

(1) The date on which the applicable limit of insurance is used up, if we sent notice in accordance with Paragraph a.; or

(2) The date on which we sent notice in accordance with Paragraph b.(1), if we did not send notice in accordance with Paragraph a.

d. The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this condition.

6. Paragraph F.11. "Loading or unloading" Liability And Medical Expenses Definition does not apply.

7. The following additional provisions apply:

a. The aggregate limits of this Policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph C.3.c.(4) of this endorsement.

b. The last sentence of Limit Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

C. Section III – Common Policy Conditions (Applicable To Section I – Property And Section II – Liability) is amended as follows:

The provisions of Paragraphs 1. through 3. apply unless this Policy covers buildings or structures containing one to four dwelling units. In that case, the provisions of Paragraphs 4. through 6. apply instead. The provisions of Paragraphs 7. through 11. apply to all insured buildings and structures.

1. Paragraphs 1., 2., 3. and 5. under A. Cancellation are replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this entire Policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation Of Policies In Effect

a. 60 Days Or Less

We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph 2.b. below.

(2) 15 days before the effective date of cancellation if we cancel for any of the reasons included in Paragraph 2.b. below.

b. For More Than 60 Days

If this Policy has been in effect for more than 60 days, or if this Policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed below, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation:

(1) Nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

© Insurance Services Office, Inc., 2015                    BP 01 15 09 15

**20200625**

(2) Conviction of a crime arising out of acts increasing the hazard insured against;

(3) Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a claim;

(4) After issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

(5) Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the Policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the Policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

(6) Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

(7) A determination by the Superintendent that continuation of the Policy would violate, or would place us in violation of, any provision of the Insurance Code; or

(8) Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Department of Financial Services, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Department of Financial Services.

3. We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the Policy and the authorized agent or broker.

5. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

2. The following is added to Paragraph **A. Cancellation:**

If one of the reasons for cancellation in Paragraph **C.1.2.b.** or **C.4.2.b.(2)** of this endorsement exists, we may cancel this entire Policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this Policy.

3. The following paragraphs are added:

   a. **Nonrenewal**

   If we decide not to renew this Policy, we will send notice as provided in Paragraph **c.** Notices Of Nonrenewal And Conditional Renewal below.

20200625

**b. Conditional Renewal**

If we condition renewal of this Policy upon:

**(1)** A change of limits;

**(2)** A change in type of coverage;

**(3)** A reduction of coverage;

**(4)** Increased deductible;

**(5)** An addition of exclusion; or

**(6)** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added; or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **c.** Notices Of Nonrenewal And Conditional Renewal below.

**c. Notices Of Nonrenewal And Conditional Renewal**

**(1)** If we decide not to renew this Policy or to conditionally renew this Policy as provided in Paragraphs **3.a.** and **3.b.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

**(a)** The expiration date; or

**(b)** The anniversary date if this is a continuous policy.

**(2)** Notice will be mailed or delivered to the first Named Insured at the address shown in the Policy and the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

**(3)** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**(4)** If we violate any of the provisions of Paragraph **c.(1)**, **(2)** or **(3)** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

**(a)** And if notice is provided prior to the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel.

**(b)** And if the notice is provided on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**(5)** If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

**(a)** Upon expiration of the 60-day period, unless Subparagraph **(b)** below applies; or

**(b)** Notwithstanding the provisions in Paragraphs **(4)(a)** and **(b)**, as of the renewal date of the Policy, if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the Policy.

**(6)** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the Policy has been replaced or is no longer desired.

4. Paragraph **2.** under **A. Cancellation** is replaced by the following:

**2. Procedure And Reasons For Cancellation**

   a. We may cancel this entire Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   b. But if this Policy:

   **(1)** Has been in effect for more than 60 days; or

   **(2)** Is a renewal of a policy we issued;

   we may cancel this Policy only for one or more of the following reasons:

   **(a)** Nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

   **(b)** Conviction of a crime arising out of acts increasing the risk of loss;

   **(c)** Discovery of fraud or material misrepresentation in obtaining the Policy or in making a claim;

   **(d)** Discovery of willful or reckless acts or omissions increasing the risk of loss;

   **(e)** Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

   **(i)** Issued the Policy; or

   **(ii)** Last voluntarily renewed the Policy;

   **(f)** The Superintendent of Financial Services' determination that continuing the Policy would violate Chapter 28 of the Insurance Law; or

   **(g)** Required pursuant to a determination by the Superintendent of Financial Services that continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

5. The following condition is added:

**Conditional Continuation**

Instead of cancelling this Policy, we may continue it on the condition that:

   a. The Policy limits be changed; or

   b. Any coverage not required by law be eliminated.

If this Policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

6. The following condition is added:

**Nonrenewal**

If, as allowed by the laws of New York State, we:

   a. Do not renew this Policy; or

   b. Condition policy renewal upon:

   **(1)** Change of limits; or

   **(2)** Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal at least 45 days, but not more than 60 days, before the expiration date of the Policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

7. The last subparagraph in Paragraph **3.** under **I. Premiums** is replaced by the following:

Our forms then in effect will apply. If you do not pay the continuation premiums, this Policy will be cancelled in accordance with the cancellation procedures for nonpayment of premium as amended in Paragraph **C.1.** of this endorsement.

© Insurance Services Office, Inc., 2015

**20200625**

8. The following condition is added:

When the property is subject to the Anti-arson Application in accordance with New York Department of Financial Services Insurance Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

a. Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire Policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

b. Before the expiration date of any policy, we will cancel the Policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

If the notice in **8.a.** or **8.b.** is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

The cancellation provisions set forth in **8.a.** or **8.b.** supersede any contrary provisions in this Policy, including this endorsement.

9. Paragraph **C. Concealment, Misrepresentation Or Fraud** is replaced by the following:

   **C. Concealment, Misrepresentation Or Fraud**

   We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss or damage for which coverage is sought under this Policy.

10. Paragraph 1. under **H. Other Insurance** is replaced by the following:

    1. If there is other valid and collectible insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I – Property.

11. Paragraph 2. under **J. Premium Audit** is replaced by the following:

    2. Premium shown in this Policy as advance premium is a deposit premium only At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the Policy and may not be waived, except when:

       a. The total annual premium attributable to the auditable exposure is not reasonably expected to exceed $1,500; or

       b. The Policy requires notification to the insurer with specific information of any additional exposure units (e.g., buildings) for which coverage is requested.

    If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

    Except as provided in this Paragraph **2.,** Paragraph **D. Examination Of Your Books And Records** continues to apply.

POLICY NUMBER: FABP820838

**BUSINESSOWNERS**
BP 04 02 01 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| | |
|---|---|
| **A.** | **Designation Of Premises (Part Leased To You):**<br>16830 Hillside Ave<br>Jamaica, NY 11432-4441 |
| **B.** | **Name Of Person Or Organization (Additional Insured):**<br>Angelo P. Ginonis<br>210 E Dover St<br><br>Valley Stream, NY 11580 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to Paragraph **C. Who Is An Insured** in Section II – Liability:

3. The person or organization shown in the Schedule is also an insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

**B.** The following exclusions are added to **Section II – Liability:**

This insurance does not apply to:

1. Any "occurrence" that takes place after you cease to be a tenant in the premises described in the Schedule.

2. Structural alterations, new construction or demolition operations performed by or for the person or organization designated in the Schedule.

BP 04 02 01 06

© ISO Properties, Inc., 2004

Page 1 of 1    □

**20200625**

BUSINESSOWNERS
BP 04 17 01 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage in Section II – Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © Insurance Services Office, Inc., 2009

20200625

POLICY NUMBER: FABP820838

**BUSINESSOWNERS**
**BP 04 30 01 06**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable | Description Of "P-9" If Applicable: |
|-----------|-----------|------------------------------------------|-------------------------------------|
| 001 | 001 | P-1 | |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A.** The following is added to the **Property General Conditions in Section I – Property:**

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

   a. **"P-1" Automatic Sprinkler System,** including related supervisory services.

   Automatic Sprinkler System means:

   (1) Any automatic fire protective or extinguishing system, including connected:

      (a) Sprinklers and discharge nozzles;

      (b) Ducts, pipes, valves and fittings;

      (c) Tanks, their component parts and supports; and

      (d) Pumps and private fire protection mains.

   (2) When supplied from an automatic fire protective system:

      (a) Non-automatic fire protective systems; and

      (b) Hydrants, standpipes and outlets.

   b. **"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

      (1) Connected to a central station; or

      (2) Reporting to a public or private fire alarm station.

   c. **"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

   d. **"P-4" Service Contract,** with a privately owned fire department providing fire protection service to the described premises.

   e. **"P-9",** the protective system described in the Schedule.

**B.** The following is added to Paragraph **B. Exclusions** in Section I – Property:

We will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

© ISO Properties, Inc., 2004

20200625

**BUSINESSOWNERS**
**BP 05 01 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2001

20200625

POLICY NUMBER:

BUSINESSOWNERS
BP 05 15 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO
# TERRORISM RISK INSURANCE ACT

### SCHEDULE

| SCHEDULE – PART I | |
|---|---|
| Terrorism Premium (Certified Acts) | $26.00 |
| Additional information, if any, concerning the terrorism premium: | |

| SCHEDULE – PART II | | |
|---|---|---|
| Federal share of terrorism losses (Refer to Paragraph **B.** in this endorsement.) | 83 % | Year: 2017 |
| Federal share of terrorism losses (Refer to Paragraph **B.** in this endorsement.) | 82 % | Year: 2018 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

20200625

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015   BP 05 15 01 15

**20200625**

**BUSINESSOWNERS**
**BP 05 23 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED
# ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

**20200625**

BUSINESSOWNERS
BP 05 38 01 15

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form **BP 00 06** and **Section II – Liability** of the Businessowners Coverage Form **BP 00 03**:

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury" as may be defined in any applicable Coverage Form.

BP 05 38 01 15        © Insurance Services Office, Inc., 2015        Page 1 of 2

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

     (1) Within the United States (including its territories and possessions and Puerto Rico); or

     (2) Outside of the United States in the case of:

       (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

       (b) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

   Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015

BP 05 38 01 15

20200625

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

**A.** The following is added to **Paragraph A.3. <u>Covered Causes of Loss</u>** in **SECTION I – PROPERTY**:

**Additional Coverage-- Equipment Breakdown**

The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below.

1. We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

   a. mechanical breakdown, including rupture or bursting caused by centrifugal force;

   b. artificially generated electrical, magnetic or electromagnetic energy, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any electrical or electronic wire, device, appliance, system or network;

   c. explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   d. loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   e. loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. Unless otherwise shown in a Schedule, the following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

   a. **Expediting Expenses**

   With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

   **(1)** make temporary repairs; and

   **(2)** expedite permanent repairs or permanent replacement.

   The most we will pay for loss or expense under this coverage is $25,000 unless otherwise shown in a Schedule.

   b. **Hazardous Substances**

   We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.

   This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **2.c.(1)(b)** below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

20200625

BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in a Schedule.

c. **Spoilage**
   (1) We will pay:
       (a) for physical damage to "perishable goods" due to spoilage;
       (b) for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;
       (c) any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.
   (2) If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment condition.

   The most we will pay for loss, damage or expense under this coverage is $25,000 unless otherwise shown in a Schedule.

d. **Data Restoration**
   We will pay for your reasonable and necessary cost to research, replace and restore lost "electronic data."

   The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, is $25,000 unless otherwise shown in a Schedule.

e. **Service Interruption**
   (1) Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

   (2) Unless otherwise shown in a Schedule, coverage for any loss of Business Income you sustain that results from the interruption of utility services will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident." If the interruption exceeds 24 hours, coverage will begin at the time of the interruption and the deductible applicable to Business Income will apply.

   (3) The most we will pay in any "one accident" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense or Spoilage, except that if a limit is shown in a Schedule for Service Interruption, that limit will apply to Business Income and Extra Expense loss under this coverage.

f. **Business Income and Extra Expense**
   Any insurance provided under this policy for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in a Schedule, then as respects Equipment Breakdown coverage, the "period of restoration" will begin immediately after the "accident," and the deductible shown in the Schedule will apply.

   The most we will pay for loss or expense under this coverage is the applicable limit for Business Income and Extra Expense, unless otherwise shown in a Schedule.

B. The following is added to **Paragraph B. Exclusions:**

**20200625**

BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement

**Equipment Breakdown Exclusions**
All exclusions in the Businessowners Coverage Form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage Equipment Breakdown.

1.  The following exclusions are modified:
    a.  As respects this endorsement only, the next to the last paragraph in **Exclusion B.1.h.** is deleted and replaced with the following:
        However, if excluded loss or damage, as described in **Paragraph (1)** above results in an "accident," we will pay only for the loss, damage or expense caused by such "accident."

    b.  As respects this endorsement only, the last paragraph of **Exclusion B.2.l.** is deleted and replaced with the following:
        But if an excluded cause of loss that is listed in 2.l.(1) through (7) results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

    c.  The following is added to **Exclusions B.2.m.** and **B.2.n**:
        We will also pay for direct physical loss or damage caused by an "accident."

2.  The following exclusions are added:
    a.  We will not pay for loss, damage or expense caused by or resulting from:
        (1) a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment; or
        (2) any of the following:
            (a) defect, programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" of any kind; or
            (b) misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.
            However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."

    b.  With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in A.1.c. above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

    c.  With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:
        (1) loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

        (2) any increase in loss resulting from an agreement between you and your customer or supplier.

**C. Deductibles**
The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in a Schedule. If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision **D. Deductibles** is deleted and replaced with the following:

1.  **Deductibles for Each Coverage**

    a.  Unless the Schedule indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

    b.  We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Schedule. We will then

---

BP 99 04 01 10          Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.          Page 3 of 6

BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement

pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

c. If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

2. **Direct and Indirect Coverages**

   a. Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Schedule.

   b. Unless more specifically indicated in the Schedule:
      (1) Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and
      (2) Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

3. **Application of Deductibles**

   a. **Dollar Deductibles**
   We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the Schedule. We will then pay the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Insurance.

   b. **Time Deductible**
   If a time deductible is shown in the Schedule, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

   c. **Multiple of Average Daily Value (ADV)**
   If a deductible is expressed as a number times ADV, that amount will be calculated as follows:
   The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration". The number indicated in the Schedule will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

   d. **Percentage of Loss Deductibles**
   If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

D. **Conditions**
The following conditions are in addition to the Conditions in the Businessowners Coverage Form.

1. **Suspension**
Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:

   a. your last known address; or

---

BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement

    **b.** the address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**2. Jurisdictional Inspections**
If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**3. Environmental, Safety and Efficiency Improvements**
If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

**4. Coinsurance**
If a coinsurance percentage is shown in a Schedule for specified coverages, the following condition applies.

We will not pay for the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, we will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

**E. The following definitions are added:**
    **1.** "Boilers and vessels" means:

        **a.** Any boiler, including attached steam, condensate and feedwater piping; and

        **b.** Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

    This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

    **2.** "Covered equipment"

        **a.** "Covered equipment" means, unless otherwise specified in a Schedule, Covered Property:
            **(1)** that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or
            **(2)** which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

        **b.** None of the following is "covered equipment":
            **(1)** structure, foundation, cabinet, compartment or air supported structure or building;
            **(2)** insulating or refractory material;
            **(3)** sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;
            **(4)** water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
            **(5)** "vehicle" or any equipment mounted on a "vehicle";
            **(6)** satellite, spacecraft or any equipment mounted on a satellite or spacecraft;
            **(7)** dragline, excavation or construction equipment; or
            **(8)** equipment manufactured by you for sale.

BUSINESSOWNER'S – Equipment Breakdown Coverage Endorsement

3.  "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

4.  "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

5.  "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

6.  "Production machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus. This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

7.  "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

    However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations unless otherwise shown in a Schedule. Coverage provided under this endorsement does not provide an additional amount of insurance.

20200625

BUSINESSOWNER'S
BP 99 188 06 16

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE ENDORSEMENT - PROPERTY

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

Paragraph **D.1. Deductibles** of **SECTION I – PROPERTY** is replaced with the following:

**D. Deductibles**

1. We will not pay for loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss as a result of one occurrence until the amount of such loss or damage exceeds the applicable Deductible shown in the Declarations or as set forth below.  We will then pay the amount of such loss or damage in excess of the Deductible up to the applicable Limit of Insurance of **Section 1 - Property**.  In the event of loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss at one or more buildings at the same location, as a result of one occurrence, only the single largest deductible scheduled for loss at such building(s) will apply to all such loss or damage regardless of the number of buildings involved in the loss.  However, this Paragraph **D.1** does not apply to loss or damage from Earthquake or Windstorm or Hail causes of loss.

   **EXAMPLES**

   **Example 1** - Loss at multiple buildings, same location.

   A fire damages Buildings 1 and 2 which results in a spoilage loss at Buildings 3 and 4 due to a power outage from the fire.

   | | |
   |---|---|
   | Property Deductible – Building 1: | $250 |
   | Property Deductible – Building 2: | $250 |
   | Limit of Insurance – Building 1: | $60,000 |
   | Limit of Insurance – Building 2: | $80,000 |
   | Loss to Building 1: | $50,100 |
   | Loss to Building 2: | $70,000 |

   | | |
   |---|---|
   | Spoilage Deductible – Building 3 $500 | : |
   | Spoilage Deductible – Building 4 $500 | : |
   | Spoilage Limit of Insurance – Building 3: $5,000 | |
   | Spoilage Limit of Insurance – Building 4: $2,000 | |
   | Spoilage loss at Building 3: | $2,500 |
   | Spoilage loss at Building 4: | $1,500 |

   The largest deductible involved in the occurrence was the $500 spoilage deductible and will be subtracted from the total Loss Payable:

   ```
     $  50,100 – Building 1 loss
   + $  70,000 – Building 2 loss
   + $   2,500 – Spoilage loss at Building 3
   + $   1,500 – Spoilage loss at Building 4
     $ 124,100 – Total loss
   - $     500 – Largest deductible involved in loss
     $ 123,600 – Total loss payable
   ```

   **Example 2** - Identical loss occurs but only at building 1, no loss at other buildings (same deductibles and limits)

   | | |
   |---|---|
   | Property Deductible – Building 1: | $250 |
   | Limit of Insurance – Building 1: | $60,000 |
   | Loss to Building 1: | $50,100 |
   | Spoilage Loss at Building 1: | $2,500 |

   The largest deductible involved in the occurrence was the $500 spoilage deductible for Building 1 and will be subtracted from the total Loss Payable.

   ```
     $  50,100 - Building 1 loss
   + $   2,500 - Spoilage loss at Building 1
     $  52,600 - Total Loss at Building 1
   - $     500 - Largest deductible involved in loss
     $  52,100 - Total loss payable.
   ```

20200625

BUSINESSOWNER'S
BP 99 60 03 12

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER BACK-UP AND SUMP OVERFLOW

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

### SCHEDULE

| Premises Number | Covered Property Annual Aggregate Limit Of Insurance | Business Income And Extra Expense Annual Aggregate Limit Of Insurance |
|---|---|---|
| Location 001, Building 001 | $5,000 | $5,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

A. We will pay for direct physical loss or damage to Covered Property, covered under Section I – Property, caused by or resulting from:

1. Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

2. Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

However, with respect to Paragraph **A.2.**, we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

***THIS IS NOT FLOOD INSURANCE. We will not pay for loss or damage from water or other materials that back up or overflow from any sewer, drain or sump that itself is caused, directly or indirectly, in whole or in part, by any flood. Flood means the overflow of surface water, waves, tides, tidal waves, streams, or other bodies of water, or their spray, all whether driven by wind or not.***

B. The coverage described in Paragraph **A.** of this endorsement does not apply to loss or damage resulting from an insured's failure to:

1. Keep a sump pump or its related equipment in proper working condition; or

2. Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

C. The most we will pay for the coverage provided under this endorsement for all direct physical loss or damage to Covered Property is the Covered Property Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Covered Property Annual Aggregate Limit of Insurance is indicated in the Schedule of this endorsement.

The applicable Covered Property Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all direct physical loss or damage sustained in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property. If loss payment for the first such occurrence does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

D. The following provisions apply to **Section I – Property** and supersede any provisions to the contrary:

The most we will pay under:

BP 99 60 03 12     Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.     Page 1 of 2

20200625

BUSINESSOWNER'S – Water Back-Up and Sump Overflow Endorsement

1. Paragraph **A.5.f. Business Income** Additional Coverage for all loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement; and

2. Paragraph **A.5.g. Extra Expense** Additional Coverage for all necessary Extra Expense you incur and that you would not have incurred if there had been no direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement;

is the Business Income And Extra Expense Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Business Income And Extra Expense Annual Aggregate Limit of Insurance is shown in the Schedule.

The applicable Business Income And Extra Expense Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all loss of Business Income you sustain and Extra Expense you incur in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property as described in Paragraph **A.** of this endorsement. If loss payment during an earlier "period of restoration" in the policy year does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for loss of Business Income you sustain or Extra Expense you incur during a subsequent "period of restoration" beginning in, but not after, that policy year. With respect to a "period of restoration" which begins in one policy year and continues in a subsequent policy year(s), all loss of Business Income you sustain or Extra Expense you incur is deemed to be sustained or incurred in the policy year in which the "period of restoration" began.

E. With respect to the coverage provided under this endorsement, the **Water Exclusion** in **Section I – Property** is replaced by the following exclusion:

**Water**

1. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

2. Mudslide or mudflow; or

3. Water under the ground surface pressing on, or flowing or seeping through:

   a. Foundations, walls, floors or paved surfaces;

   b. Basements, whether paved or not; or

   c. Doors, windows or other openings; or

4. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.** or **3.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **4.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **4.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

 Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.   BP 99 60 03 12

**20200625**

BUSINESSOWNER'S
BP 99 62 12 12

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW YORK - RETAIL STORES

This endorsement modifies insurance provided under the following:

BUSINESSOWNER'S COVERAGE FORM

**A.** The following are added to Paragraph **A.5. Additional Coverages** of Section I – Property:

**a. Brands And Labels**

(1) If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

(a) Stamp the word salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

(b) Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

(2) We will pay reasonable costs you incur to perform the activity described in Paragraph **(a)** or **(b)** above. But the total we pay for these costs and the value of the damaged property will not exceed the applicable Limit of Insurance on such property.

**b. Ordinance Or Law – Equipment Coverage**

(1) Subject to Paragraph **(2)**, if a Covered Cause of Loss occurs to equipment that is Covered Property, we will pay to repair or replace the equipment as required by law.

(2) If a Covered Cause of Loss occurs to refrigeration equipment that is Covered Property, we will pay:

(a) The cost to reclaim the refrigerant as required by law;

(b) The cost to retrofit the equipment to use a non-CFC refrigerant as required by the Clean Air Act of 1990, and any amendments thereto or any other similar laws; and

(c) The increased cost to recharge the system with a non-CFC refrigerant.

(3) The terms of this coverage apply separately to each piece of covered equipment.

(4) We will not pay under this Additional Coverage for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

(5) Loss to the equipment will be determined as follows:

(a) If the equipment is repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

(i) The amount you actually spend to repair the equipment, but not for more than the amount it would cost to replace the equipment with equipment of the same kind and quality; or

(ii) The Limit of Insurance shown in the Declarations as applicable to the covered Building or Business Personal Property.

(b) If the equipment is not repaired or replaced, we will not pay more than the lesser of:

(i) The actual cash value of the equipment at the time of loss; or

(ii) The Limit of Insurance shown in the Declarations as applicable to the Building or Business Personal Property.

(c) We will not pay for loss due to any ordinance or law that:

(i) You were required to comply with before the loss, even if the equipment was undamaged; and

(ii) You failed to comply with.

**c. Lock Replacement**

(1) We will pay for the cost to repair or replace locks at the described premises due to theft or other loss to keys.

(2) The most we will pay under this Additional Coverage for all loss or damage in any one occurrence is $1,000.

(3) A per occurrence deductible of $100 will apply.

20200625

BUSINESSOWNER'S – New York - Retail Stores

#### d. Web Sites

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage by a Covered Cause of Loss to:

(a) The operation of your business web site at a described location; or

(b) The operation of your business web site at the premises of a vendor acting as your service provider.

The most we will pay for loss under this Additional Coverage in any one occurrence is the lesser of:

(a) The loss you sustain during the 7-day period immediately following the first 12 hours after the suspension of your website operations; or

(b) $50,000.

The most we will pay for loss under this Additional Coverage during each policy period is $100,000.

#### e. Credit Card Slips

We will pay for amounts you are unable to collect due to loss of or damage to credit card slips while located at the described premises as the result of a Covered Cause of Loss.

It is your responsibility to establish the amount of the loss under this Additional Coverage. If it is not possible, the amount of the loss will be determined as follows:

(1) If you have been in business for more than twelve months at the location of the loss, one-thirtieth (1/30) of the average monthly amount of credit card slips will be considered as average daily credit card slips for that location.

The twelve months immediately preceding the discovery of the loss will be used to determine the average monthly amount.

(2) If you have been in business for less than twelve months at the location of the loss, the average daily credit card slips shall be one-thirtieth (1/30) of the average monthly amount of credit card slips for the number of months you have been in business at that location.

(3) The average daily credit card slips will be multiplied by the number of days for which slips are lost to determine the amount of the loss subject to the maximum limit indicated below.

The most we will pay as a result of loss or damage to credit card slips under this Additional Coverage during each policy period is $10,000.

**B.** The following are added to Paragraph **A.6. Coverage Extension** of **Section I – Property:**

#### a. Loss Payment on Merchandise Sold

You may extend the coverage that applies to your Business Personal Property to cover loss of or damage to merchandise that you have sold but not yet delivered.

The basis of the valuation of such merchandise shall be the price paid by the customer to the insured, not to exceed the amount for which the insured is legally liable.

The most we will pay under this Coverage Extension during each policy period is $25,000.

**b. Property in Transit (including F.O.B. Shipments)**

(1) You may extend the insurance provided by this Coverage Form to apply to loss or damage to personal property used in your business that is in transit at your risk more than 1,000 feet from the described premises.

We cover property shipped:

(a) By any type of carrier you do not own, lease, or operate;

(b) In or on any vehicle you own, lease, or operate; or

(c) In the care, custody, or control of your salesperson.

(2) We will also pay for loss or damage to property you ship on a F.O.B., meaning Free on Board, basis if you cannot collect the loss from the consignee. But we will only pay the amount of your interest in the property.

Coverage provided by this Coverage Extension applies for any of the Covered Causes of Loss and for direct loss caused by flood, earthquake, and landslide.

The most we will pay for loss or damage under this Coverage Extension during each policy period is $25,000 unless a higher limit is shown in the Declarations, but not more than $5,000 for property in the care, custody or control of any one salesperson.

**C.** If the Employee Dishonesty Optional Coverage is shown as an applicable coverage in the Declarations, the following is added to Paragraph **3. Employee Dishonesty** of Paragraph **G. Optional Coverages** of **Section I – Property** and is subject to the provisions of that Paragraph:

#### 3. Employee Dishonesty

We will also pay for loss of or damage to "money", "securities" and "other property" sustained by your customer resulting directly from theft committed by an identified employee, acting alone or in collusion with other persons.

The property covered under this coverage is limited to property:

a. That your customer owns or leases; or

b. That your customer holds for others.

Coverage applies only while the property is in a Covered Building at the premises described in the Declarations.

BUSINESSOWNER'S – New York - Retail Stores

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization, including your customer. Any claim for loss that is covered under this coverage must be presented by you.

D. For coverage provided under this endorsement the following definitions are added to Paragraph **H. Property Definitions** of **Section I – Property:**

1. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property specifically excluded under this policy.

E. The following are added to Paragraph **A. Coverages** of **Section II – Liability:**

1. **Delivery Errors And Omissions Coverage**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of a failure to deliver or a misdelivery of items you hold for sale by you, any of your "employees" or by a concessionaire trading under your name. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for delivery errors and omissions to which this insurance does not apply. We may, at our discretion, investigate the circumstances of any misdelivery or failure to deliver and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Paragraph **1.e.** below;

      (2) We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $250. We will then pay the amount of loss or damage in excess of $250 up to the applicable Limit of Insurance for this coverage; and

      (3) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Delivery Errors And Omissions Coverage.

   b. This coverage applies only to errors in deliveries that take place or omissions of such deliveries that should have taken place in the "coverage territory" and during the policy period.

   c. This coverage does not apply to:

      (1) Intentional error or intentional misdelivery or failure to deliver "your product".

      (2) "Bodily injury", "property damage" or "personal and advertising injury".

(3) Discrimination based on a customer's race, color, national origin, religion, gender, marital status, age, sexual orientation or preference, physical or mental condition or residence location.

d. The **Supplementary Payments** provision applicable to the Bodily Injury, Property Damage, and Personal And Advertising Injury Liability Coverages also applies to this **Delivery Errors And Omissions Coverage.**

e. The most we will pay for the sum of all damages under this coverage because of all failures or misdeliveries is $10,000 in any annual period starting with the beginning of the policy period shown in the Declarations. This limit applies separately to each premises described in the Declarations.

f. The following Condition replaces the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition under Paragraph **E. Liability And Medical Expenses General Conditions** of **Section II – Liability** for the **Delivery Errors Or Omissions Coverage:**

**Duties In The Event Of A Delivery Error Or Omission**

(1) You must see to it that we are notified as soon as practicable of an error or omission which may result in a claim. To the extent possible, notice should include:

   (a) How, when and where the error or omission took place; and

   (b) The name(s) and address(es) of the affected customer(s).

(2) If a claim is made or "suit" is brought against any insured, you must:

   (a) Immediately record the specifics of the claim or "suit" and the date received; and

   (b) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

(3) You and any other involved insured must:

   (a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (b) Authorize us to obtain records and other information;

   (c) Cooperate with us in our investigation or settlement of the claim or defense against the "suit"; and

   (d) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of error or omission to which this insurance may apply.

20200625

(4) Notice given by you or on your behalf or written notice by or on behalf of any claimant to any of our agents in New York State, which adequately identifies you, will be the same as notice to us.

(5) No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

(6) Failure to give notice to us as required under this policy shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**(g) Legal Action Against Us**

If we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

(1) Brings an action to declare the rights of the parties under the policy; and

(2) Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**2. Merchandise Withdrawal Expenses Coverage**

a. We will reimburse you for "merchandise withdrawal expenses" incurred because of "merchandise withdrawal" to which this insurance applies.

b. This insurance applies to a "merchandise withdrawal" only if the "merchandise withdrawal" is initiated in the "coverage territory" during the policy period because:

(1) You determine that the "merchandise withdrawal" is necessary; or

(2) An authorized government entity has ordered you to conduct a "merchandise withdrawal".

c. The initiation of a "merchandise withdrawal" will be deemed to have been made only at the earliest of the following times:

(1) When you first announced, in any manner, to the general public, your vendors or to your "employees" (other than those "employees" directly involved in making the determination) your decision to conduct or participate in a "merchandise withdrawal". This applies regardless of whether the determination to conduct a "merchandise withdrawal" is made by you or is requested by a third party; or

(2) When you first received, either orally or in writing, notification of an order from an authorized government entity to conduct a "merchandise withdrawal".

d. "Merchandise withdrawal expenses" incurred to withdraw "your products" which contain the same or substantially similar "defects" will be deemed to have arisen out of the same "merchandise withdrawal".

e. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $250. We will then pay the amount of loss or damage in excess of $250 up to the applicable Limit of Insurance for this coverage.

f. This insurance does not apply to "merchandise withdrawal expense" arising out of:

(1) Any "merchandise withdrawal" initiated due to:

(a) The failure of "your product" to accomplish its intended purpose, including any breach of warranty of any kind, whether written or implied. This exclusion does not apply if such failure has caused or is reasonably expected to cause "bodily injury".

(b) Copyright, patent, trade secret, trade dress or trademark infringement.

(c) Transformation of a chemical nature, deterioration, or decomposition of "your product". This exclusion does not apply if it is caused by:

(i) An error in manufacturing, design, or processing;

(ii) Transportation of "your product"; or

(iii) "Merchandise tampering".

(d) Expiration of the designated shelf life of "your product"; or

(2) A "defect" in "your product" known to exist by you or your "executive officers", prior to the date this endorsement was first issued to you or prior to the time "your product" leaves your control or possession.

(3) Recall of any specific product for which "bodily injury" or "property damage" is excluded under Paragraph A. Coverages of Section II – Liability by endorsement.

BUSINESSOWNER'S – New York - Retail Stores

(4) Recall when "your product" or a component contained within "your product" has been:

   (a) Banned from the market by an authorized government entity prior to the policy period; or

   (b) Distributed or sold by you subsequent to any governmental ban.

(5) The defense of a claim or "suit" against you for liability arising out of a "merchandise withdrawal".

(6) The costs of regaining goodwill, market share, revenue or "profit" or the costs of redesigning "your product".

g. The most we will reimburse you for the sum of all "merchandise withdrawal expenses" incurred for all "merchandise withdrawals" initiated during the policy period is $25,000.

h. The following Condition replaces the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition under Paragraph **E. Liability And Medical Expenses General Conditions** of **Section II – Liability** for the **Merchandise Withdrawal Expenses Coverage:**

**Duties In The Event Of A Defect Or A Merchandise Withdrawal**

(1) You must see to it that we are notified as soon as practicable of any actual, suspected or threatened "defect" in "your product" or any governmental investigation, that may result in a "merchandise withdrawal". To the extent possible, notice should include:

   (a) How, when and where the "defect" was discovered;

   (b) The names and addresses of any injured persons and witnesses; and

   (c) The nature, location and circumstances of any injury or damage arising out of use or consumption of "your product".

(2) If a "merchandise withdrawal" is initiated, you must:

   (a) Immediately record the specifics of the "merchandise withdrawal" and the date it was initiated; and

   (b) Notify us as soon as practicable.

You must see to it that we receive written notice of the "merchandise withdrawal" as soon as practicable.

(3) You must promptly take all reasonable steps to mitigate the expenses associated with a "merchandise withdrawal". Any "profit" that you receive from mitigating the expenses will be deducted from the amount of reimbursement that you will receive for "merchandise withdrawal expenses".

(4) You and any other involved insured must:

   (a) Immediately send us copies of pertinent correspondence received in connection with the "merchandise withdrawal";

   (b) Authorize us to obtain records and other information; and

   (c) Cooperate with us in our investigation of the "merchandise withdrawal".

(5) Notice given by or on your behalf or written notice by or on behalf of any claimant to any of our agents in New York State, which adequately identifies you, will be the same as notice to us.

(6) Failure to give notice to us as required under this policy shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

(g) **Legal Action Against Us**

If we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

   (1) Brings an action to declare the rights of the parties under the policy; and

   (2) Names the injured person, someone acting for the injured person or other claimant as a party to the action.

F. For coverage provided under this endorsement the following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions** of **Section II – Liability:**

1. "Defect" means a defect, deficiency or inadequacy that creates a dangerous condition.

2. "Merchandise tampering" is an act of intentional alteration of "your product" which has caused or is reasonably expected to cause "bodily injury".

When "merchandise tampering" is known, suspected or threatened, a "merchandise withdrawal" will be limited to those batches of "your product" which are known or suspected to have been tampered with.

20200625

BUSINESSOWNER'S – New York - Retail Stores

3. "Merchandise withdrawal" means the recall or withdrawal:

   a. From the market; or

   b. From use by any other person or organization;

   of "your products" or products which contain "your products", because of known or suspected "defects" in "your product", or known or suspected "product tampering", which has caused or is reasonably expected to cause "bodily injury".

4. "Merchandise withdrawal expenses" means those reasonable and necessary extra expenses listed below, paid and directly related to a "merchandise withdrawal":

   a. Costs of notification;

   b. Costs of stationery, envelopes, production of announcements and postage or facsimiles;

   c. Costs of overtime paid to your regular non-salaried employees and costs incurred by your employees including costs of transportation and accommodations;

   d. Costs of computer time;

   e. Costs of hiring independent contractors and other temporary employees;

   f. Costs of transportation, shipping or packaging;

   g. Costs of warehouse or storage space; or

   h. Costs of proper disposal of "your products" or products that contain "your products" that cannot be reused, not exceeding your purchase price or your cost to produce the products.

5. "Profit" means the positive gain from business operation after subtracting for all expenses.

G. With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed in conjunction with the conduct of your retail operation, when conducted by you or on your behalf, Paragraph a. of the definition of "products-completed operations hazard" in Paragraph F. **Liability And Medical Expenses Definitions** of **Section II – Liability** is replaced by the following:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

 Includes copyrighted material of the Insurance Services Office, Inc., used with its permission. BP 99 62 12 12

20200625

Index No.: 709672/2019
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

BEVERLY WILLIAMS,

Plaintiff,

-against-

ANGELO GIONIS, PAULINE GIONIS, FANCY VARIETIES INC., THE CITY OF NEW
YORK and NEW YORK CITY DEPARTMENT OF TRANSPORTATION,

Defendants.

## RESPONSE TO DEFENDANT'S NOTICE FOR DISCOVERY AND INSPECTION

KERLEY, WALSH, MATERA & CINQUEMANI, P.C.
Attorneys for Defendant
FANCY VARIETIES INC.
2174 Jackson Avenue
Seaford, NY 11783
(516) 409-6200
Facsimile No. (516) 409-8288

**NOTICE OF ENTRY**
Sir:  Please take notice that the within is a (certified) true copy of a                    duly
entered in the office of the Clerk of the within named Court on               20
Dated:

**NOTICE OF SETTLEMENT**
Sir:  Please take notice that an order                 of which the within is a true copy will be
presented for settlement to the Hon.                        one of the judges of the within
named Court, at          on the     day of         at       .M.
Dated:

KERLEY, WALSH, MATERA & CINQUEMANI, P.C.
Attorneys for Defendant
2174 Jackson Avenue
Seaford, NY 11783
(516) 409-6200
Facsimile No. (516) 409-8288

Service of a Copy of the within                          is hereby admitted.
Dated:          20

20200625



UNITED STATES POSTAGE
PITNEY BOWES
02 1P
0000894667     $ 002.80⁰
             JUN 23 2020
MAILED FROM ZIP CODE 11783

**KERLEY, WALSH, MATERA & CINQUEMANI, P.C.**
2174 JACKSON AVENUE
SEAFORD, NEW YORK 11783

**TO:** LAW OFFICE OF ANDREA G. SAWYERS

P.O. Box 2903

Hartford, CT  06104-2903